UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FERNANDO LEDESMA GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>DREW BOSTOCK, Seattle Field Office Director, United States Immigration and Customs and Removal Operations, et al.,<br><br>Respondents. | CASE NO. 2:25-cv-01404-JNW-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

Fernando Ledesma Gonzalez filed a Petition for Writ of Habeas Corpus on July 2, 2025, challenging his immigration detention. He subsequently moved for a Temporary Restraining Order ("TRO"). Dkt. No. 37. The Government opposed the motion and asked the Court to instead rule on the habeas petition without a hearing and on the existing record. Dkt. No. 39. The Court agrees that is the most efficient course and that a hearing is not necessary. Accordingly, Ledesma Gonzalez's habeas petition comes before the Court, and the Court GRANTS it.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

## 2. BACKGROUND

In December 2017, fourteen-year-old Ledesma Gonzalez traveled from Michoacán, Mexico to the United States with his family seeking asylum. They were fleeing targeted cartel violence—cartel members had held a machete to Ledesma Gonzalez's neck and threatened to kill him. Dkt. Nos. 36-1 ¶ 3; 1 ¶ 37. His parents faced death threats and extortion because they owned their own tortilla-making business. Dkt. No. 1-2 at 2.

Upon arrival at a United States port of entry, the family was taken into immigration custody. Dkt. No. 36-1 ¶ 4. Immigration and Customs Enforcement (ICE) released Ledesma Gonzalez the following day on an Order of Release and Recognizance (OREC) because he was not a flight risk or danger to the community. Dkt. No. 31-2.

While Ledesma Gonzalez was still a minor, his family applied for asylum. *Id.* at 2. In December 2021, an immigration judge denied the asylum application and ordered the family removed to Mexico. Dkt. No. 30 at 2. The family appealed and remained out of custody while they prosecuted their appeal through the Board of Immigration Appeals (BIA). *Id.*; Dkt. No. 36-2 at 2. Over two years later, the BIA remanded the matter for further proceedings. Dkt. No. 30 at 2. Another merits hearing was held in May 2025. *Id.* On June 30, the immigration judge denied Ledesma Gonzalez's and his family's asylum application and ordered the family removed. *Id.* Neither Ledesma Gonzalez, nor his immigration attorney, received notice of the decision that day. Dkt. No. 36-2 at 2 (Ledesma Gonzalez's attorney received a copy of the decision on either July 7 or 8.).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

The following day, July 1, when Ledesma Gonzalez arrived at his regularly scheduled ICE check-in in Eugene, Oregon, ICE arrested him. Dkt. No. 36-1 at 2. He received no notice or documentation notifying him of the reasons for his detention. *Id.* at 2–3. That night, ICE transferred Ledesma Gonzalez to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 30 at 3.

On July 2, Ledesma Gonzalez filed a habeas petition in the District of Oregon. Dkt. No. 1. The Government responded that the petition should be dismissed for lack of jurisdiction or transferred to the Western District of Washington. Dkt. No. 13. In a supporting declaration, an ICE field officer stated that Ledesma Gonzalez had been arrested and detained solely because his OREC had been "cancelled pursuant to the removal order." Dkt. No. 14 at ¶ 10. No other reasoning was provided.

The Government detained Ledesma Gonzalez for several days before it provided written notice to his immigration attorney that it had denied his asylum application. Dkt. No. 36-2 at 3. Once she received notice, she filed a timely notice of appeal with the BIA. *Id.* As his attorney attests, "Because [she] filed a timely notice of appeal of the immigration court's decision to deny Petitioner asylum application, there is no final order of removal pending against him." *Id.* at 4. "Pursuant to 8 C.F.R. § 1241.1, a final order of removal will not be issued unless and until the appeal is dismissed by the BIA." *Id.* As exemplified by the BIA's handling of his first appeal, this appeal, too, may take years to resolve.

On July 24, 2025, Ledesma Gonzalez's case was transferred to this Court. Dkt. No. 21. On September 8, the Government filed a habeas return, attaching a

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

declaration from Supervisory Detention and Deportation Officer Christopher Sica. Dkt. Nos. 29; 30; *see* 28 U.S.C. § 2243 ("The person to whom the writ or order is directed shall make a return certifying the true cause of the detention."). According to Sica, Ledesma Gonzalez had been taken into custody on July 1 because the Eugene Office of Enforcement and Removal Operations ("ERO") "had determined Petitioner to be a flight risk after the immigration judge's removal order." Dkt. No. 30 at ¶ 10. This is the first time the agency stated that Ledesma Gonzalez was a flight risk, and Sica does not explain how the agency reached that conclusion, or who made it. *See generally id.*

Before his incarceration, Ledesma Gonzalez lived with his family in Silverton, Oregon. He received a work permit from the Department of Homeland Security and worked successfully as a welder. Dkt. No. 36-1 at 3. It is undisputed that Ledesma Gonzalez has no criminal history and that he has never missed an ICE check-in. During his incarceration, on September 5, the Department of Homeland Security renewed Ledesma Gonzalez's work permit. *Id.* "Having been detained over two months now and without any information regarding his detention or immigration case, Petitioner and his family feel sad, depressed, and helpless." Dkt. No. 36-2 at 5.

On September 22, Ledesma Gonzalez moved for a TRO. The Government opposed the motion and requested that the Court instead consider the habeas petition on the existing record without holding a hearing. Dkt. No. 39 at 2. The Court grants the Government's request and considers the habeas petition on the existing record.

### 3. DISCUSSION

**3.1 Legal standard.**

District courts grant writs of habeas corpus to those who demonstrate their custody violates the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting, *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). Courts have statutory and inherent power to grant such petitions. 28 U.S.C. §§ 2241; *Ozturk v. Trump*, 779 F. Supp. 3d 462, 486–87 (D. Vt. 2025) (citing *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)); *see also Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987) (recognizing that the court may release a habeas petitioner on bond "in the course of a habeas corpus proceeding" and that the power to do so "derives from the power to issue the writ itself."). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)); *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (holding that "petitioner carries the burden of proving by a

preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254).

**3.2    Statutory framework: Ledesma Gonzalez is detained under 8 U.S.C. § 1226(a).**

As a threshold matter, the Court must determine which statutory provision governs Ledesma Gonzalez's detention. The answer affects what procedures the Government must follow. Under 8 U.S.C. § 1226(a), noncitizens are entitled to a bond hearing before an immigration judge to determine whether they pose a flight risk or danger to the community. Under 8 U.S.C. § 1225(b)(2), by contrast, noncitizens are subject to mandatory detention without eligibility for bond.

The Government's habeas return asserts that Ledesma Gonzalez may be detained under either § 1225 or § 1226(a). Dkt. No. 29 at 3 ("DHS detains Petitioner pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226(a)."). The Government does not, however, assert that the procedural prerequisites for detention under § 1225(b)(2) have been satisfied. Nor could it. Section 1225(b)(2)(A) applies only where "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The record contains no evidence that any "examining immigration officer" made such a determination about Ledesma Gonzalez.

The Supreme Court has drawn a clear line between the two detention provisions. Section 1225 "applies primarily to aliens seeking entry into the United States," while Section 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 287–88

(2018). The Ninth Circuit has similarly described § 1226 as "provid[ing] the general process for arresting and detaining" noncitizens "who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.

Recently, another court in this district extensively analyzed which statute governs noncitizens in circumstances like Ledesma Gonzalez's. *See Rodriguez Vazquez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025). In *Rodriguez Vazquez*, the court held that noncitizens who entered the United States without inspection but have been "residing in the United States" and "not apprehended upon arrival" are governed by § 1226(a)'s discretionary detention scheme, not § 1225(b)(2)'s mandatory detention. *Id.* at *16–17, 19, 21. The court reasoned that § 1225(b)(2) requires that the noncitizen be "seeking admission"—language that is necessarily "'present-tense active language.'" *Id.* at 22 (quoting *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025)). Noncitizens who have lived in the United States for years and are arrested during routine compliance activities are not engaged in "seeking admission." *Id.*; *see also Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) (same).

This Court finds the reasoning in *Rodriguez Vazquez* persuasive and adopts it here. Ledesma Gonzalez has resided in the United States for eight years. He was not apprehended upon arrival or at the border. He was arrested while appearing for a routine ICE check-in in Eugene, Oregon—an act of compliance, not an attempt to gain admission. Under these circumstances, he falls within Section 1226(a)'s discretionary detention scheme, not Section 1225(b)(2)'s mandatory detention provision.

Section 1226(a) provides that immigration officers may, in their discretion, detain noncitizens *or* may release them on conditional parole (also called an Order of Release on Recognizance, or "OREC"). 8 U.S.C. § 1226(a); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)"). The corresponding regulation requires that, before granting release, the immigration officer must determine that such "release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

When Ledesma Gonzalez arrived in the United States, ICE detained him briefly, then released him on an OREC. Dkt. Nos. 36-1 ¶ 4; 31-2. By issuing the OREC, ICE necessarily determined that Ledesma Gonzalez would not pose a danger and was likely to appear for future proceedings. *See* 8 C.F.R. § 236.1(c)(8).

Section 1226(b) authorizes the Attorney General to "revoke a bond or parole . . . rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). Immigration regulations clarify that only certain officials may

exercise this revocation authority: "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, [and] officer in charge (except foreign)[.]" 8 C.F.R. § 1236.1(c)(9) (custody and release procedures). A Supervisory Detention and Deportation Officer (SDDO)—the official who signed Ledesma Gonzalez's Notice of Custody Determination—is not among these enumerated officials. Dkt. No. 31-5; *see United States v. Gemmill*, 535 F.2d 1145, 1152 (9th Cir. 1976) (agency officials not explicitly granted authority in regulation lack authority to act).

In sum, Ledesma Gonzalez is detained under § 1226(a).

**3.3    Ledesma Gonzalez's detention violates the APA.**

Ledesma Gonzalez contends that ICE's decision to revoke his OREC and detain him was arbitrary and capricious and thus violated the Administrative Procedure Act. Dkt. No. 1 ¶¶ 80–91. The Court agrees. The Government's decision fails for multiple independent reasons: the agency provided no contemporaneous explanation for its decision; the post-hoc justifications it later offered are unsupported by the record and contradict the evidence; and the revocation was made by an official lacking regulatory authority to do so.

**3.3.1    APA legal standard.**

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quoting

*Franklin v. Massachusetts,* 505 U.S. 788, 796 (1992)). "It requires agencies to engage in reasoned decisionmaking and directs that agency actions be set aside if they are arbitrary or capricious." *Id.* (citation modified); 5 U.S.C. § 706(2)(A).

Agency actions are arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (citation modified). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

When reviewing agency action, the court must consider only the reasons expressly provided by the agency; it "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)). Likewise, the reviewing court may not consider an agency's post hoc rationalizations. *Regents of the Univ. of Cal.,* 591 U.S. at 21. The reviewing court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (quotation omitted).

Finally, federal agencies are "'obliged to abide by the regulations [they] promulgate[],' including [their] own internal operating procedures." *Backcountry*

*Against Dumps v. Fed. Aviation Admin.*, 77 F.4th 1260, 1267 (9th Cir. 2023) (quoting *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)). "This is especially true '[w]here a prescribed procedure is intended to protect the interests of a party before the agency.'" *Id.* (quoting *Sameena Inc.*, 147 F.3d at 1153).

### 3.3.2 The Government provided no contemporaneous explanation for revoking Ledesma Gonzalez's release.

Ledesma Gonzalez argues that ICE's decision to change its initial position and revoke his release lacks the reasoned decision-making necessary to survive arbitrary and capricious review. Dkt. No. 35 at 19. The Court agrees. First, there is no contemporaneous documentation or evidence explaining the agency's decision to revoke Ledesma Gonzalez's OREC. The documentation accompanying his arrest states only that Ledesma Gonzalez's OREC had already been cancelled; the arresting officer wrote, "I notified LEDESMA-Gonzalez that the Order of Release on Recognizance *was cancelled* and that he was under arrest pursuant to the order of removal issued on June 30, 2025." Dkt. No. 31-4 at 4 (emphasis added).

The record does not reflect any deliberative process, any consideration of Ledesma Gonzalez's individual circumstances, or any articulated reasoning for why the agency changed its eight-year-old determination that he was not a flight risk or danger to the community. This absence of contemporaneous explanation renders the decision arbitrary and capricious. *See M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *10–11 (D. Or. Aug. 21, 2025) (granting habeas where ICE did not provide petitioner with any written explanation of the reasons for her detention "upon revocation"). Thus, ICE's revocation decision is arbitrary and capricious.

### 3.3.3 The Government's post-hoc justifications fail arbitrary and capricious review.

While the absence of contemporaneous explanation is itself fatal to the Government's detention decision, the Court will also consider the post-hoc justifications the Government has offered during this litigation. Even accepting these belated rationalizations, the revocation decision was arbitrary and capricious.

The Government has offered two different explanations for revoking Ledesma Gonzalez's release. After his arrest, ICE maintained that Ledesma Gonzalez's "OREC was cancelled pursuant to the order of removal issued on June 30, 2025." Dkt. No. 14 at 3. Then, over two months later in its habeas return, the Government submitted a declaration from a different ICE officer stating that the Eugene ERO "had determined Petitioner to be a flight risk after the immigration judge's removal order." Dkt. No. 30 ¶ 10. The Government now argues that this flight risk determination constitutes a "material" change in conditions warranting revocation of Ledesma Gonzalez's OREC.

When ICE has previously released a noncitizen after determining they are not a flight risk or danger to the community, "the BIA has limited this [revocation] authority such that, in practice, the DHS re-arrests non-citizens only after a 'material' change in circumstances: 'where a previous bond determination has been made by an immigration judge, no change should be made by the DHS absent a change of circumstance.'" *Vargas v. Jennings*, Case No. 20-cv-5785, 2020 WL 5074312, at *2 (N.D. Cal. Aug. 23, 2020) (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Matter of Sugay*, 17 I.&N. Dec. 637, 640 (B.I.A.

1981))); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). This standard prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions.

Here, the Government's justifications fall flat. First, the Government's assertion that the OREC was cancelled "pursuant to the removal order" fails because that order was not final on July 1, 2025—the day of Ledesma Gonzalez's arrest. Indeed, the order expressly stated that it would become final "upon waiver of appeal or expiration of the time to appeal, whichever occurs first." Dkt. No. 31-3 at 17 (quoting 8 C.F.R. § 1003.39); *see also id.* at 18 (warning about civil penalties that could be levied against Ledesma Gonzalez "if the removal order becomes final" and he "fails to depart the United States" voluntarily). The immigration judge gave Ledesma Gonzalez until July 30, 2025, to file an appeal, and his attorney did so timely. Dkt. Nos. 31-3 at 17; 36-1 ¶ 12. A non-final, appealable order cannot serve as the basis for revocation. Moreover, the immigration judge's order does not direct ICE to revoke Ledesma Gonzalez's OREC. Thus, the Court finds that the agency has failed to "articulate a satisfactory explanation for [ICE's] action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation modified).

Second, the Government's flight risk determination fares no better. This reasoning impermissibly "fail[s] to consider . . . important aspect[s] of the problem" and "runs counter to the evidence" before the agency, making it arbitrary and capricious. *See id.* The only fact the Government considered when it revoked

Ledesma Gonzalez's release and detained him was that an immigration judge had denied his asylum application. But a denial of asylum, standing alone, cannot constitute a material change justifying revocation—particularly where, as here, the individual's circumstances demonstrate reduced rather than increased flight risk.

The agency failed to consider other important aspects relevant to its decision, like the fact that Ledesma Gonzalez has lived in Oregon with his family for eight years and never missed an ICE check-in. The agency failed to consider that Ledesma Gonzalez's asylum application has been denied once before, and he nevertheless continued to comply with all the conditions of his release as he successfully appealed the denial. The agency also apparently failed to consider that immigration judge's order was not final and would not be final during any appeal. Rather than consider any of these important aspects relevant to its decision, the agency offers only a post hoc, generalized assumption to support its decision—the assumption that any person who receives a removal order (whether final or not) inherently becomes a flight risk.

Accordingly, even considering the agency's post hoc rationalizations for revoking Ledesma Gonzalez's release, the decision was arbitrary and capricious.

### 3.3.4   The revocation was made by an official lacking regulatory authority.

Separately, the decision violates the APA because the record does not reflect *who* decided to revoke Ledesma Gonzalez's release, nor does the Government assert that the decision was made by somebody with the authority to make it under 8 C.F.R. § 1236.1(c)(9). Instead, the Government simply maintains that "DHS

conducted an individual review of Petitioner's case" and decided to revoke his OREC. *See* Dkt. No. 29 at 6 (Government's habeas return); *see also* Dkt. No. 30 (Sica declaration). Thus, the record does not reflect that the agency followed its own regulations. Accordingly, the decision to revoke Ledesma Gonzalez's release violates the APA on this basis too. *See M.S.L. v. Bostock*, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered."); *Jimenez v. Bostock*, Case No. 3:25-cv-00570-MTK, 2025 WL 2430381, at *6 (D. Or. Aug. 22, 2025) (holding revocation of release violated the APA because there was "no evidence . . . that the decision to revoke Petitioner's release was made by any of the individuals listed in the regulation").

For these reasons, the Court finds for Ledesma Gonzalez on Count One of the habeas petition.

### 3.4    Ledesma Gonzalez's detention violates due process.

The petition's second count alleges that Ledesma Gonzalez's detention violates the Fifth Amendment's Due Process Clause, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. This protection "applies to *all persons* within the United States." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (emphasis added).

"[T]he Supreme Court has recognized that criminal detention cases provide useful guidance in determining what process is due non-citizens in immigration detention." *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017). Indeed, it has

recognized that immigration cases are distinct from other civil cases because they "'involve the awesome authority of the State' to take 'devastatingly adverse action'—here, the power to remove individuals from their homes, separate them from their families, and deport them to countries they may have last seen many years ago." *Id.* (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–128 (1996)) (citing *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("We have long recognized that deportation is a particularly severe 'penalty' . . . . Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process.") (citation omitted)).

Ledesma Gonzalez's habeas petition argues that his incarceration violates procedural due process.[1] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Analyzing a procedural due process claim involves two steps. *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012). "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (internal quotation omitted). To decide whether the attendant procedures were sufficient, courts must balance the factors the Supreme Court laid out in *Mathews v. Eldridge*:

---

[1] Ledesma Gonzalez's briefing also argues substantive due process. The Court does not address this argument, as it was not raised in the petition.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 16

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335; *see also Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013).

Ledesma Gonzalez satisfies the first step because the Government has restricted his liberty by imprisoning him, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see Jimenez*, 2025 WL 2430381, at *6 ("[F]reedom from government custody is fundamental.").

Turning to the balancing test. The first factor—the private interest affected by the official action—is Ledesma Gonzalez's liberty interest. As noted above, this is a fundamental interest that must be accorded significant weight.

Second, the risk that the Government will erroneously deprive Ledesma Gonzalez of his liberty interest is high here. This case involves the revocation of a release determination made eight years ago, not an initial detention decision. When ICE released Ledesma Gonzalez in December 2017, it did so after determining—as required by regulation—that "such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); Dkt. No. 31-2. By issuing the OREC, ICE necessarily found that Ledesma Gonzalez was neither a flight risk nor a danger to the community.

In July 2025, ICE revoked that release without any reassessment of those factors. As another court in this district recently explained under similar circumstances:

> Petitioner's initial detention and release occurred before he had ever appeared in immigration court, before he had retained an attorney, and was made with consideration of the need for detention. Specifically, ICE's initial decision to release Petitioner was based on a consideration of the danger that Petitioner posed to the community and the likelihood that he would appear for future hearings. *See* 8 C.F.R. § 1236.1(c)(8). The Court finds that arresting and re-detaining him at this point without first reconsidering those factors poses a significant risk of an erroneous deprivation of Petitioner's liberty interest in continued release.

*E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025) (collecting cases).

Here, no pre-detention process was afforded to Ledesma Gonzalez. He had no notice or opportunity to be heard before being arrested and detained. While the Government argues that he can challenge its detention decision after the fact, neither Ledesma Gonzalez nor his immigration attorney have actually had an opportunity to speak to any immigration officials about the basis for his detention, let alone to a judge. *See* Dkt. Nos. 36-1 at 3; 36-2 at 4. This is true even though he requested review by an immigration judge the day he was arrested, three months ago. Dkt. No. 31-5.

Third, the Court considers the Government's interest and any administrative burdens it would face if required to add to or substitute its procedures. Consistent with other courts in this district, this Court finds that "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *Wamsley*,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 18

2025 WL 2402130, at *5 (citing *Ortega*, 415 F. Supp. 3d at 970) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.")). The Government does not address whether pre-detention hearings impose a significant administrative burden on ICE. *See generally* Dkt. Nos. 29 (the Government's habeas return); 39 (Government's opposition to TRO motion). The Court assumes that requiring pre-detention process would present *some* administrative burden. Even so, given the high risk of erroneous deprivation, the fundamental liberty interest at stake, and the fact that ICE was previously convinced that Ledesma Gonzalez would not flee nor pose a danger to his community, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. *See E.A. T.-B.*, 2025 WL 2402130, at *6 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

The Court's decision is in line with others finding that ICE's recent re-detention practices violate procedural due process. *See, e.g., Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) (finding Petitioner's re-detention when Petitioner had made his immigration court dates and there was "no notice, explanation, or opportunity for Petitioner to be heard" to establish a high risk of erroneous deprivation of his protected liberty interest); *E.A. T.-B.*, 2025 WL 2402130, at *4 (finding that even if petitioner is detained due to violations of his release conditions, this does not mean he "can be detained for those

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 19

violations without a hearing."); *M.S.L. v. Bostock et al.*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *9-16 (D. Or. August 21, 2025) (granting habeas relief when, like here, ICE did not afford M-S-L an opportunity to respond to the alleged reasons for revocation of release).

Based on this review of the *Mathews* factors, the Court finds that Ledesma Gonzalez has a protected liberty interest in his continuing release from custody, and that due process required that he receive a hearing before an immigration judge before he could be re-detained. Accordingly, the Court finds for Ledesma Gonzalez on Count Two of his habeas petition.

### 4.  CONCLUSION

In sum, the Court GRANTS the habeas petition, Dkt. No. 1, DENIES Respondents' return Dkt. No. 29, and DENIES Petitioner's TRO motion as moot, Dkt. No. 37. The Court ORDERS Respondents to RELEASE Petitioner from custody immediately, and further, that Petitioner may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate. Within TWENTY-FOUR (24) hours of this order, Respondents must provide the Court with a declaration confirming that Ledesma Gonzalez has been released from custody and informing the Court of the date and time of his release.

Dated this 7th day of October, 2025 at 2:32 p.m.

Jamal N. Whitehead
United States District Judge